1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

DANIEL E. LOVELL,

11
                        Plaintiff,

12
            v.

13
CAROLYN W. COLVIN, Acting
14
Commissioner of the Social Security
Administration,

15
                        Defendant.

16

CASE NO. 13-cv-05757 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17        This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20   States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.).

21        After considering and reviewing the record, the Court finds that the ALJ erred

22   when reviewing the medical evidence from examining doctors, Dr. Hill and Dr. Lemberg.

23   Although the ALJ found that plaintiff exerted poor effort in certain tests performed by

24

Dr. Hill, the record demonstrates that plaintiff's variable effort was a factor in Dr. Hill's ultimate opinion. Also, although the ALJ stated that the longitudinal record does not support the opinion of Dr. Lemberg, she fails to indicate substantial evidence in the record to support this nonspecific finding.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration of the medical evidence provided by examining doctors, Dr. Hill and Dr. Lemberg.

<u>BACKGROUND</u>

Plaintiff, DANIEL E. LOVELL, was born in 1961 and was 48 years old on the alleged date of disability onset of March 1, 2010 (*see* Tr. 170-72). Plaintiff has a Bachelors of Science degree in Business Administration (Tr. 42).   Plaintiff has work experience as a sales representative, intake coordinator in social services and as a route sales delivery truck driver (Tr. 94, 181, 192). Plaintiff was in a vehicle accident while working as a route sales truck driver and has not worked since that time (Tr. 46-48).

According to the ALJ, plaintiff has at least the severe impairments of "learning disorder, cognitive disorder, adjustment disorder with depression, bipolar disorder by history, cervical sprain, shoulder arthritis status post surgeries, and cervicogenic headaches (20 CFR 404.1520(c))" (Tr. 14).

At the time of the hearing, plaintiff was living with his sister in a home they jointly own (Tr. 40-41).

//

//

## PROCEDURAL HISTORY

Plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* Tr. 170-71, 111-13, 119-123). Plaintiff's requested hearing was held before Administrative Law Judge Rebekah Ross ("the ALJ") on April 23, 2012 (*see* Tr. 31-100). On May 21, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 9-30).

On June 27, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August, 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on December 24, 2013 (*see* ECF Nos. 10, 11).

In his Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ erred in her evaluation of the medical evidence; and (2) Whether or not the ALJ erred in finding plaintiff not fully credible (*see* ECF No. 13, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

(1)     **Whether or not the ALJ erred in her evaluation of the medical evidence.**

Plaintiff contends that the ALJ erred when rejecting the opinions of examining psychologists and physician, Dr. McCoy Dean Haddock, Psy.D, Dr. Edwin Hill, Ph.D., and Dr. Mary Lemberg, M.D.; and erred by relying on the opinions of non-examining psychological and medical consultants (*see* Opening Brief, ECF No. 13, pp. 4-13).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v.Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831).

For the reasons stated below, the Court finds that the ALJ properly discounted the opinion of Dr. Haddock, but failed to provide specific and legitimate reasons for discounting the opinions of Drs. Hill and Lemberg.

> (a)     **The ALJ gave legally sufficient reasons for the weight afforded to the medical opinion of Dr. Haddock.**

Dr. Haddock, Psy.D., examined plaintiff and opined in July of 2003 that plaintiff "is unable to carry a regular work load," further stating that plaintiff "requires a case load of 75% of normal" and "he is capable of doing his assignments, but requires more time to accomplish the task" (Tr. 534). Dr. Comrie, Psy.D., reviewed plaintiff's medical records in January of 2011 and contradicted this opinion, stating that plaintiff is able to carry out

simple routine tasks and some detailed instructions with reasonable concentration, persistence and pace (*see* Tr. 22 (*citing* Tr. 440)). After reviewing plaintiff's medical records, a state medical consultant affirmed Dr. Comrie's assessment (*see* Tr. 22 (*citing* Tr. 449)). The ALJ rejected Dr. Haddock's opinion in favor of Dr. Comrie's opinion because Dr. Haddock lacked a treatment history with the plaintiff, failed to define "normal" in his determination that plaintiff could only carry seventy-five percent of a normal caseload, and issued his opinion before plaintiff began working as a customer service manager (Tr. 22).

The lack of a treatment relationship between an examining psychologist and the plaintiff could be a legitimate reason for rejecting that source's opinion in favor of a treating source because more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). Here, however, the ALJ is not rejecting the opinion of an examining source for the opinion of a treating source; instead, she is rejecting it for the opinion of a non-examining source that lacks any form of contact at all with plaintiff. The Court must reject this reason for discounting Dr. Haddock's opinion because a lack of treatment history with the plaintiff cannot be a legitimate reason for deferring to another source who likewise lacks a treatment history.

The ALJ's second reason for discounting Dr. Haddock's opinion is equally unconvincing. Although the ALJ found that Dr. Haddock used the term "normal" ambiguously, the Court notes that Dr. Haddock's medical source statement was sufficiently specific to allow for an evaluation and understanding of his opinion (*see* Tr.

534). References to plaintiff's "slowness at work" and inability "to carry a regular work load" indicate that the language in question refers to plaintiff's inability to complete more than 75% of the caseload normally demanded by his position. Therefore, this finding by the ALJ does not provide a legitimate reason to discount Dr. Haddock's opinion. *See Moseley v. Astrue*, No. 11cv5323-BHS-JRC, 2012 U.S. Dist. LEXIS 99899, at *25 (W.D. Wash. June 21, 2012) (unpublished opinion) (Rejecting the ALJ's finding that "[t]he medical source statement… provided is fairly vague" as a legitimate reason to discount an examining physician's opinion when the "medical source statement was specific sufficiently to allow for an evaluation and understanding" of the doctor's opinions.)

Plaintiff's full-time position as a customer service manager subsequent to the issue of Dr. Haddock's opinion is a sufficiently specific and legitimate reason to discount that opinion. Although plaintiff suggests that success at this position was due to an accommodation allowing plaintiff to work an additional six hours each day, the record does not corroborate this claim. Indeed, the record indicates that he worked fourteen hours a day, five to six days a week (*see* Tr. 203). It does not, however, indicate that an accommodation was made allowing plaintiff to work more than forty hours each week because he was a slow worker. In fact, in the examination of plaintiff by the ALJ it was stated:

> **Q** …before that accident, were they happy with your work?
> **A** Yes… when I first moved over from Spokane, I had a supervisor named Eric Freeman, and I transferred over in August. I took over the route that I had in October. And by the end of the year, he—or even— I'll just say yeah, by the end of 2009… he said that I was doubling the sales of the territory, which he was really happy about.

(Tr. 49).

The record suggests that plaintiff worked a longer than usual day in order to obtain superior work results; namely, doubling the sales that his route would normally yield. This contradicts Dr. Haddock's opinion that plaintiff could only accomplish 75% percent of a normal workload while supporting Dr. Comrie's contradictory opinion that plaintiff could sustain full-time work with reasonable concentration, persistence, and pace. A reasonable mind could find this reason adequate to support the ALJ's decision to discount Dr. Haddock's opinion in favor of Dr. Comrie. *See Magallanes*, *supra*, 881 F.2d at 747, 750.

Although the first two reasons offered by the ALJ for discounting Dr. Haddock's opinion are not legitimate, plaintiff's subsequent performance as a customer service manager constitutes a specific and legitimate reason supported by substantial evidence.

(b)   **The ALJ gave insufficient reasons for the weight afforded to the medical opinion of Dr. Hill.**

Dr. Hill, Ph.D., examined plaintiff in April of 2010 and concluded that plaintiff suffered from bipolar disorder, cognitive disorder, and learning disorder (*see* Tr. 22 (*citing* Tr. 278)). He also stated that plaintiff "needed to be where he could work at his own pace on one thing at a time" (Tr. 22 (*citing* Tr. 279, 280)). This opinion was contradicted by the opinion of non-examining psychological consultant, Dr. Comrie, Psy.D. (*see* Tr. 22 (*citing* Tr. 440)). The ALJ rejected the opinion from Dr. Hill in favor of the opinion by Dr. Comrie (*see* Tr. 22).

1    When an ALJ seeks to discredit a medical opinion, he must explain why his own

2    interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at

3    725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also*

4    *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the

5    basis of a disability claim, clinical and laboratory data may consist of the diagnosis and

6    observations of professionals trained in the field of psychopathology. The report of a

7    psychiatrist should not be rejected simply because of the relative imprecision of the

8    psychiatric methodology") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir.

9    1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))).

10   The ALJ rejected Dr. Hill's opinion because Dr. Hill noted that plaintiff exhibited

11   poor effort on the tests, making the test results difficult to interpret and indicating that the

12   plaintiff may have intentionally feigned cognitive dysfunction. Poor effort during an

13   evaluation may speak to plaintiff's credibility. *See Smolen, supra*, 80 F.3d at 1284

14   (citations omitted). But that does not mean it will undermine the qualifications or

15   credibility of the medical professional who interprets those results.  In his opinion, Dr.

16   Hill acknowledged the limitations of the data obtained from the tests and made

17   professional conclusions that took those limitations into account. He states in the

18   conclusion of his report:

19
20       It does not appear that [plaintiff] put forth his maximum effort at all
         times and there are some indications that he was intentionally
21       performing poorly on at least one of the tests. As such, it is difficult to
         interpret the obtained test results and they probably reflect a low estimate
22       of his maximum capabilities. It seems likely that the obtained results are
         a function of psychiatric problems associated with mood disorder and
23       current environmental stressors… He… appears to be in need of working

24

ORDER ON PLAINTIFF'S COMPLAINT - 9

1
2

> in an environment where he can work at his own pace in a supportive
> setting where he can focus on one thing at a time and have minimal
> demands for multitasking and/or distractions…
> His performances were indicative of variable effort and limited ability to
> sustain productive activity consistently. *If such performances are
> indicative of how he would function on a day-to-day basis in the
> competitive marketplace, his prognosis for success would be guarded.*

3
4
5

(Tr. 279, 280) (emphasis added).

6

7       While the ALJ relies on the test results obtained by Dr. Hill to support her

8   assessment of plaintiff's credibility (*see* Tr. 19), she disregards Dr. Hill's interpretation of

9   those results while considering opinion evidence to evaluate plaintiff's level of function

10  (*see* Tr. 22). Although common sense might suggest that variable effort by an examinee

11  and inconsistent test results could undermine the accuracy of a medical opinion based on

12  those tests, it is not appropriate for the ALJ to insert her interpretation of the results in

13  place of an examining psychologist's opinion. *See Reddick, supra*, 157 F.3d at 725

14  (citations omitted); *See also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)

15  ("judges, including administrative law judges of the Social Security Administration, must

16  be careful not to succumb to the temptation to play doctor. The medical expertise of the

17  Social Security Administration is reflected in regulations; it is not the birthright of the

18  lawyers who apply them. Common sense can mislead; lay intuitions about medical

19  phenomena are often wrong") (internal citations omitted); *Herwick v. Astrue*, No. C12-

20  489-RAJ-BAT, 2012 U.S. Dist. LEXIS 168998, at *6 (W.D. Wash. Nov. 7, 2012) ("An

21  ALJ may not render his or her own medical opinion or substitute his or her own diagnosis

22  for that of a physician's") (citations omitted). This seems especially true where, as here,

23
24

the medical professional cites the variable effort of the examinee and inconsistency of the test results to support his ultimate conclusion regarding the examinee's limitations.

Other than restating the specific results of the individual tests that Dr. Hill performed and interpreted as a whole, the ALJ did not provide any reason for discounting Dr. Hill's overall evaluation of those results. As such, the ALJ failed to provide a legitimate reason for discounting the opinion of Dr. Hill.

(c)   **The ALJ gave insufficient reasons for the weight afforded to the medical opinion of Dr. Lemberg.**

On December 9, 2010, Dr. Lemberg, M.D., interviewed plaintiff and performed a mental status evaluation where she determined that plaintiff would have difficulty interacting with others, would require a highly structured work environment, and would be unable to complete a normal work day without significant interruptions (*see* Tr. 22 (citing Tr. 241)). The ALJ rejected Dr. Lemberg's opinion "because it is not supported by the longitudinal record" (Tr. 22-23).

Elsewhere in her opinion, the ALJ refers to the daily activities of the plaintiff, such as walking his 30 pound puppy for 15-20 minutes a day, preparing meals and sweeping floors (*see* Tr. 21, 65). She also references a lay opinion by Lisa Tang, PT, and Terry Mertens, OTR/L, following a physical examination on December 15, 2011 that states plaintiff performed at the light work category on a full time basis (Tr. 21 (*citing* Tr. 565)).  While this evidence might support a finding that plaintiff physically is capable of performing work on a full-time basis, it does not address the limitations outlined in Dr. Lemberg's opinion that were based on plaintiff's mental status. Rather than indicate any

evidence which might contradict Dr. Lemberg's opinion regarding plaintiff's mental

status, the ALJ indicates that "there was only one incident when the [plaintiff] had

difficulty with his supervisors" (*see* Tr. 23).

Apart from indicating an event that in fact supports the opinion that plaintiff

would have difficulties interacting with others, the ALJ also fails to reference any

evidence that contradicts Dr. Lemberg's opinion that plaintiff requires a highly structured

work environment and would be unable to complete a normal work day without

significant interruptions due to his mental status. Here, the ALJ merely stated that Dr.

Lemberg's opinion is not supported by the longitudinal record. Because this reason was

not specific nor supported by substantial evidence, the Court concludes that the ALJ

failed to provide a legally sufficient reason for discounting the opinion of Dr. Lemberg.

(d)     **The errors by the ALJ in evaluating the medical evidence were**
         **not harmless.**

The errors committed by the ALJ while evaluating Dr. Haddock's opinion were

harmless, but the errors committed in evaluating the opinions of Drs. Hill and Lemberg

were not.

The Ninth Circuit has "recognized that harmless error principles apply in the

Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

Cir. 2006) (collecting cases)). The court noted that "in each case we look at the record as

a whole to determine [if] the error alters the outcome of the case." *Molina*, *supra*, 674

F.3d at 1115.Also, the Ninth Circuit has "adhered to the general principle that an ALJ's

error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability. *See Molina, supra*, 674 F.3d at 1117-22; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

The ALJ failed to properly credit the opinions of Dr. Hill and Dr. Lemberg regarding plaintiff's mental limitations in her residual functional capacity [RFC] analysis (*see* Tr. 22, 23). The ALJ's step four and step five findings were based on this RFC and, as the steps four and five findings may be different when based on an RFC that includes the limitations outlined by Dr. Hill and Lemberg, this matter must be evaluated anew.

(2) **Whether or not the ALJ erred in finding plaintiff not fully credible.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

CONCLUSION

The ALJ erred when reviewing the medical evidence provided by examining doctors, Dr. Hill and Dr. Lemberg.

1    Based on this reasons and the relevant record, the Court **ORDERS** that this matter

2  be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to

3  the Acting Commissioner for further consideration.

4    **JUDGMENT** should be for plaintiff and the case closed.

5  Dated this 9th day of July, 2014.

6

7

8  J. Richard Creatura
   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24